UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE CROCKETT,

       Plaintiff,                      CIVIL ACTION NO. 04 CV 73373 DT

      v.                             DISTRICT JUDGE GERALD E. ROSEN

JO ANNE B. BARNHART,        MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

### I.  Introduction

This Social Security case comes before the court on the parties' cross-motions for summary judgment.  For the reasons stated herein, the court recommends that the Commissioner's motion be **GRANTED** and that plaintiff's motion be **DENIED**.

### II.  Background

Plaintiff filed applications for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on September 20, 2001, claiming that he was disabled due to diabetes, high blood pressure, bilateral carpal tunnel syndrome, and the residual effects of a stroke, with an onset date of November 18, 2000.  (Tr. 19, 50-55, 68)  Plaintiff was 51 years of age when he filed the applications.  The Social Security Administration (SSA) denied the claim on December 17, 2001.  (Tr. 37-41)  Plaintiff then requested a hearing before an administrative

law judge (ALJ). (Tr. 42) The hearing was held on April 23, 2003, before ALJ John A. Ransom. (Tr. 310-327) On May 27, 2003, the ALJ issued a decision denying plaintiff's claim. (Tr. 16-27) The ALJ determined that plaintiff had a "history of a November 2000 cerebrovascular accident, hypertension, non-insulin dependent diabetes mellitus, and mild bilateral carpal tunnel syndrome," and that his impairments were "severe" within the meaning of 20 C.F.R. § 404.1520, but that he did not have an impairment that met or equaled any impairment listed in Appendix 1, Subpart P of the Social Security Regulations.[1] (Tr. 26) The ALJ further concluded that plaintiff, notwithstanding his impairments, was capable of performing a limited range of light-exertion jobs and that there were a significant number of such jobs in the national economy.[2] (Tr. 27) Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act. Id.

Following the ALJ's denial of his application, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council. (Tr. 12-15) The Appeals Council denied the request on August 4, 2004. (Tr. 6-8) The ALJ's decision thus became the final decision of the

---

[1]Plaintiff filed a prior DIB application on April 5, 2001, alleging the same onset date he alleged in the September 20 applications. The SSA denied the application on June 20, 2001 and, apparently, plaintiff did not pursue the application any further. The ALJ reopened the June 20, 2001 determination.

[2]"Light work" is defined in 20 C.F.R. § 404.1567(a) as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting of or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

Commissioner. On August 30, 2004, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). As noted above, the parties have filed cross-motions for summary judgment. Plaintiff's sole argument is that the ALJ posed an inaccurate hypothetical question to the vocational expert (VE) who testified at the hearing and, therefore, that the ALJ's reliance on the VE's testimony was improper. The Commissioner contends in her motion that the decision is supported by substantial evidence and should thus be affirmed.

### III.  Legal Standards

#### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); see also 42 U.S.C. § 1382c(a)(3)(C)(i). The claimant bears of the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB and SSI claims. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. As discussed in Foster, Id. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment. If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.[3]

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal

---

[3]Foster involved a claim for DIB, not SSI. However, the analysis is the same regardless of whether the claim in question is one for DIB or SSI.

standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997).  The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

### IV.  Analysis

As stated above, at step five of the disability determination process, the ALJ must consider, among other things, the claimant's residual functional capacity (RFC).  In the matter before the court, the ALJ rendered the following RFC determination:

> The claimant has the residual functional capacity to lift and carry up to twenty pounds occasionally and up to ten pounds frequently. The claimant requires a sit/stand option and can perform no climbing.  He can perform no forceful and sustained gripping, grasping, or repetitive wrist movement.  The claimant must be able to use a cane as needed.

(Tr. 26)  At the hearing, the ALJ posed a hypothetical question to the VE regarding plaintiff's ability to engage in substantial gainful activity.  The ALJ incorporated the above-quoted RFC determination in the hypothetical.  (Tr. 270-71)  In response thereto, the VE testified that a person with such limitations was capable of working as an inspector, a cashier, or a parking lot attendant.  (Tr. 323)  Further, the VE testified that there were approximately 27,500 such jobs in the regional economy. Id.  Based on the testimony of the VE, the ALJ concluded that there were

a significant number of jobs in the regional economy that plaintiff could perform and, therefore, that he was not disabled. (Tr. 27)

Substantial evidence to support to support a finding that a claimant is not disabled "may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987)(citations omitted). Plaintiff contends that the hypothetical posed by the ALJ did not accurately portray his functional limitations and, therefore, that the ALJ could not properly rely on the VE's testimony in determining that plaintiff was not disabled.

Plaintiff's claim of error in this regard relates to the restrictions the ALJ incorporated in the hypothetical to account for plaintiff's bilateral carpal tunnel syndrome. As noted above, the ALJ determined that plaintiff could "perform no forceful and sustained gripping, grasping, or repetitive wrist movement." (Tr. 26, 323) Plaintiff contends that these restrictions did not present to the VE an accurate picture of the extent of plaintiff's carpal tunnel-related functional limitations. According to plaintiff, "[t]hose accommodations may partially take into account Mr. Crockett's bilateral carpal tunnel syndrome, but it is well documented in the medical field that risk factors for carpal tunnel syndrome include, but are not limited to, repetitive, hand-intensive activities." Plaintiff's Brief, at p. 9. Plaintiff further asserts that "[a] standard restriction/limitation for an individual with carpal tunnel syndrome is for that person to avoid repetitive gripping, grasping, twisting, turning, [or] pinching with the hands." Id. Plaintiff's assertions as to what is "well documented in the medical field" and what a "standard

restriction/limitation" may well be correct. However, the issue with respect to review of a hypothetical is whether it accurately portrays the claimant in question. Each case must be decided on its own facts and, in this case, plaintiff points to no evidence in the record indicating that the restrictions utilized by the ALJ were insufficient to accommodate his condition. Rather, the record supports the ALJ's determination that further restrictions were not warranted.

An EEG study performed on April 2, 1998, indicated that plaintiff suffered from "mild bilateral carpal tunnel syndrome without electromyographic evidence of thenar muscle denervation." (Tr. 246) On June 13, 2001, Dr. Sidney L. Schuchter, a Michigan Disability Determination Services (DDS) consulting physician, examined plaintiff and found, *inter alia*, that he had full range of motion in his wrists, hands, and fingers. (Tr. 187) Another consulting physician indicated in a Physical Residual Functional Capacity Assessment form that plaintiff had no manipulative limitations. (Tr. 192) On November 13, 2001, Dr. Samiullah H. Sayyid, also a DDS consulting physician, examined plaintiff and found that "[f]ine and gross dexterity in both upper extremities and the grip in both hands was normal." (Tr. 201) Dr. Sayyid further found that "[a]ll the joints in both upper and lower extremities were normal with full range of movements." Id. In addition, there is nothing in the record indicating that plaintiff has undergone surgery or any other type of treatment for his carpal tunnel syndrome. In sum, there is simply nothing in the record indicating that greater restrictions than those incorporated in the hypothetical were necessary to fully accommodate plaintiff's carpal tunnel syndrome.

Plaintiff has raised no other objections to the hypothetical and the court, having reviewed the record, finds that the hypothetical reasonably and accurately conveyed to the VE the extent

of plaintiff's functional limitations. Accordingly, the VE's testimony in response thereto constitutes substantial evidence to support the ALJ's determination that plaintiff is not disabled.

### V.  Conclusion

For the reasons stated herein, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's cross-motion for summary judgment be **DENIED**, that the determination denying disability benefits be affirmed, and that plaintiff's complaint be dismissed with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

|  |  |
|---|---|
|  | s/Virginia M. Morgan |
|  | VIRGINIA M. MORGAN |
| Dated:  May 3, 2005 | UNITED STATES MAGISTRATE JUDGE |

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the attorneys of record and the Social Security Administration by electronic means or U.S. Mail on May 3, 2005.

s/Jennifer Hernandez
Case Manager to
Magistrate Judge Morgan